# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **LSREF3 SAPPHIRE TRUST 2014,** as successor in interest to LSREF3 Sapphire, LLC, as successor in interest to BMO Harris Bank N.A. f/k/a Harris N.A., and **LSREF3 SAPPHIRE, LLC,** | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 14 C 7968<br>)<br>) Judge Jorge Alonso |
| **BARKSTON PROPERTIES, LLC, CHARLES B. RICE,** and **CATHERINE B. RICE,** | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff LSREF3 Sapphire Trust 2014 ("Sapphire Trust" or "the Trust") sues defendants Barkston Properties, LLC ("Barkston"), Charles B. Rice, and Catherine B. Rice for breach of contract due to their alleged failure to comply with various conditions arising out of a loan that BMO Harris Bank N.A. ("Harris Bank") made to defendants in 2006 and later assigned to Sapphire Trust. Defendants have filed a counterclaim for declaratory judgment (Count I), breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq* (Count IV), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq* (Count V), violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 (Count VI), and violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g) (Count VII). Sapphire Trust moves to dismiss all but the declaratory judgment count. Sapphire LLC, which was joined as a party after Sapphire Trust filed its motion

to dismiss, joins Sapphire Trust in moving to dismiss Counts II-VII and strike the jury demand, and moves to dismiss Count I against it as well. The motions are denied, except that defendants' jury demand is stricken.

I.  BACKGROUND

In 2006, Harris Bank made a loan to Barkston of $9,400,000 pursuant to a Term Loan Agreement and accompanying note. (Countercl. ¶ 16, ECF No. 44.) Charles and Catherine Rice guaranteed the loan under a written Guaranty. (*Id.* ¶ 17.) The parties extended the term of the loan by entering into a forbearance agreement in 2009. (*Id.* ¶ 18.) Defendants subsequently defaulted, and Harris Bank filed a lawsuit against the Rices in 2012, but the parties resolved their differences in June 2013 by entering into a Second Forbearance Agreement, under which defendants pledged a number of real estate properties as additional collateral to secure the loan. (*Id.* ¶¶ 19-20.) The Second Forbearance Agreement recognized that defendants were in default, and it established a "Standstill Period" lasting until June 28, 2020, during which Harris Bank agreed to "forbear from exercising its rights and remedies available by reason of the Existing Default" provided there were no further defaults. (*Id.* ¶ 23.) On June 19, 2014, Harris Bank assigned the loan to LSREF3 Sapphire, LLC ("Sapphire LLC" or "the LLC"), which immediately assigned the loan to Sapphire Trust. (*Id.* ¶ 25.)

On August 26, 2014, defendants sent Sapphire LLC notice that a sale of one of the properties serving as collateral for the loan, a property in Kiawah Island, South Carolina, was imminent, and they requested that Sapphire LLC approve closing expenses and release its interest in the property. (*Id.* ¶ 26.) Sapphire LLC refused, asserted that defendants were in default under the loan documents because they had misrepresented the value of the Kiawah property and failed to maintain $10,000,000 in liquid assets, and demanded immediate payment in full of all amounts owed. (*Id.* ¶ 27.) Defendants sought an order from this Court enjoining

Sapphire Trust and Sapphire LLC from obstructing the sale of the Kiawah property, and, in a case that was subsequently consolidated with this case, Judge Chang granted their motion for a preliminary injunction. *Rice v. LSREF3 Sapphire Trust 2014*, Case No. 14 C 8675, Prelim. Inj. & Order, ECF No. 44.

## II. LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether [a pleading] states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a pleading that states a claim for relief—in this case, a counterclaim—must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted). Stated differently, a pleading that purports to state a claim for relief "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## III. BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

In Count II of their counterclaim, defendants claim that Sapphire[1] breached the Second Forbearance Agreement by refusing to release the lien on the Kiawah property and allow the sale to proceed. In Count III, they allege that Sapphire breached the implied covenant of good faith and fair dealing by (1) refusing to release the lien on the Kiawah property and (2) accelerating

---

[1] Where defendants bring counterclaims against both Sapphire entities, and where it is unnecessary or difficult, based on the limited information before the Court at this stage of the case, to properly distinguish between Sapphire LLC and Sapphire Trust, the Court will refer to them collectively as "Sapphire."

3

the loan based on false assertions that defendants were in default under the loan documents, when in fact the alleged defaults either existed at the time of the Second Forbearance Agreement, in which Sapphire explicitly agreed not to seek relief against defendants based on then-existing defaults, or they were not defaults at all.

### A. Failure to State a Claim

Sapphire argues that defendants do not state a claim for breach of contract because they point to no language in the Second Forbearance Agreement or any other of the loan documents that obligates Sapphire to release its lien on the Kiawah property merely because defendants have found someone who wants to buy it, nor do defendants state how they were damaged by Sapphire's refusal to release its lien. Sapphire also contends that defendants do not state a claim for breach of the implied covenant of good faith and fair dealing because there is no independent cause of action for breach of the implied covenant cognizable under Illinois law; rather, a breach of the implied covenant of good faith and fair dealing must be asserted within a breach of contract claim.

Although defendants have pleaded their breach of contract and breach of the implied covenant of good faith claims in separate counts as if they are factually or legally distinct claims, they tend to muddle the issues in their opposition brief, referring to the implied covenant of good faith and fair dealing numerous times in the section of their brief addressing Count II, although the allegations of Count II do not explicitly refer to the implied covenant. The Court construes Counts II and III as stating essentially the same claim regarding the issue of whether Sapphire was required to release the Kiawah mortgage. [2] Sapphire is correct that Illinois provides no independent cause of action for breach of the implied covenant of good faith and fair dealing,

---

[2] Sapphire does not specifically address, in either its opening brief or its reply, the portion of Count III alleging that Sapphire breached the implied covenant by unreasonably asserting that new defaults have ended the Standstill Period, and the Court assumes that Sapphire does not seek dismissal of this claim.

4

but, looking beyond how the allegations are broken into separate counts that are captioned differently, which is of no significance for purposes of a motion to dismiss in federal court,[3] it appears that defendants are not asserting an "independent" breach of implied covenant claim. Rather, they are making one claim spread across Counts II and III: a claim that Sapphire breached a contract, under a theory of breach of implied covenant of good faith and fair dealing, by refusing to release the Kiawah lien.

Thus, Sapphire's motion to dismiss Count III as an "independent" breach of implied covenant claim is denied, but it remains to determine whether Sapphire's breach of contract claim, properly characterized, should be dismissed. To state a breach of contract counterclaim under Illinois law (which both parties cite), defendants must allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by [defendants]; (3) a breach by [Sapphire]; and (4) resultant damages." *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

Every contract contains an implied covenant of good faith and fair dealing between the parties, but the implied covenant is not an independent source of duties; rather, it guides the interpretation of the terms of the contract. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992). Where the contract vests one of the parties with discretion in performing an obligation, and that party exercises that discretion in bad faith, unreasonably, or in a manner

---

[3] There was no need to break the claim concerning Sapphire's refusal to release the lien into separate counts, even if the counts had set forth separate theories of recovery, and this case illustrates one reason why there is the "potential for considerable mischief," *Al-Dabbagh v. Greenpeace, Inc.*, No. 94 C 4941, 1995 WL 9246, at *2 (N.D. Ill. Jan. 10, 1995), in splintering claims into separate counts even when they are based on the same transaction or occurrence, a practice that is out of place in federal pleading. *See generally ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 973 F. Supp. 2d 839, 840-41 (N.D. Ill. 2013). This practice has the potential to "confuse, rather than clarify," by inducing defendants (or, here, counter-defendants) to "attack[] 'counts' as if they were 'claims.'" *See Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 997 (N.D. Ill. 2013).

5

inconsistent with the reasonable expectations of the parties, it breaches the implied covenant of good faith and fair dealing. *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 792-93 (N.D. Ill. 2010). "'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990). The implied covenant of good faith and fair dealing cannot alter the express terms of a contract, but "[w]hen the contract is silent, principles of good faith . . . fill the gap." *Id.*

The Second Forbearance Agreement is silent as to when or whether Harris Bank (or its successor in interest, Sapphire) is required to release its lien on the Kiawah property or any other property pledged as "Additional Collateral," but it contains the following relevant terms in paragraphs 8 and 9:

> 8. *Sale of Additional Collateral.* Should any of the Additional Collateral be sold at any time during the Standstill Period, [Barkston] and/or [Mr. and Mrs. Rice] shall pay to the Bank or cause the titled owners of the Additional Collateral to pay to the Bank, 90% of the Net Sales Proceeds. For purposes of this Agreement, *"Net Sales Proceeds"* means the purchase price payable to [Barkston, Mr. and Mrs. Rice] or the titled owner(s) of the Additional Collateral at closing, less the commissions, property taxes (including prorations), repair/maintenance expenses that Seller is required by the sales contract to pay or reimburse at closing, and customary closing costs, including expenses for title examinations, survey, title insurance premiums, and any other expenses customarily paid by a seller in the jurisdiction where the property being sold is located. The Net Sale Proceeds received by the Bank shall be applied ratably based on amount of principal outstanding) to the balance then due under the Loan Documents and the balance then due under the loan documents between Ringo's Ridge, LLC and the Bank.
>
> 9. *Property Sales Efforts.* During the Standstill Period, [Barkston] and/or [Mr. and Mrs. Rice] shall provide the Bank with all necessary and reasonable cooperation in the Bank's continuing due diligence on the Property and Additional Collateral including, but not limited to, providing access upon demand from the bank to the Property and Additional Collateral for purposes of appraisals, and [Barkston] and/or [Mr. and Mrs. Rice] shall provide the Bank with bi-annual (June 1 and December 31 of each year during the Standstill Period) updates of all sales efforts

6

> for the Property and Additional Collateral, if any, which updates shall include, but shall not be limited to, production of documentary evidence of (a) current status of listing prices or any adjustments thereof, (b) any offers or counteroffers or letters of intent to acquire the Property or Additional Collateral, (c) marketing plans from any of the listing agents for the Property or Additional Collateral, (d) updated strategy to increase buyer-interest in the Property or Additional Collateral should market offers and or interest not be forthcoming or below expectations, and (e) any discussion of market-based events that could have an effect (either positively or negatively) the sale of the Property or Additional Collateral.

(Countercl. ¶ 53, ECF No. 44.) Thus, the agreement explicitly contemplated the sale of the Additional Collateral, including the Kiawah property. Judge Chang recognized as much in his Preliminary Injunction and Order, in which he concluded that defendants demonstrated a likelihood of success in establishing a "contractual duty to release the lien." *Rice v. LSREF3 Sapphire Trust 2014*, Case No. 14 C 8675, ECF No. 44, at 6-7.

Defendants allege in the counterclaim, and further explain in their brief, that they entered into the Second Forbearance Agreement with the reasonable expectation that if they were able to find a buyer for the Kiawah property, Sapphire would release the lien so as to facilitate the sale, which would allow defendants, under the terms of the contract, to use 90% of the proceeds to pay down their loan balance. By refusing to release the lien, defendants contend, Sapphire interfered with defendants' attempts to perform their own payment obligations to Sapphire under the contract. *See Fifth Third Bank (Chi.) v. Stocks*, 720 F. Supp. 2d 1008, 1012 (N.D. Ill. 2010); *Stuart Park Assocs. Ltd. P'ship v. Ameritech Pension Trust*, 846 F. Supp. 701, 713 (N.D. Ill. 1994). Assuming the truth of the version of the facts related by defendants, the Court could conclude that, by refusing to release the lien, Sapphire took opportunistic advantage of defendants, dashed their reasonable expectations, and abused any discretion the contract may have afforded it with respect to releasing the lien. These allegations are sufficient to state a claim for breach of contract under the theory that Sapphire breached the implied covenant of

good faith and fair dealing. *See LaSalle Bank Nat'l Assoc v. Paramont Props.*, 588 F. Supp. 2d 840, 858 (N.D. Ill. 2008).

### B. Other Grounds for Dismissal

Sapphire additionally argues that defendants do not plead any damages caused by the alleged breach of contract. In their response brief, defendants explain that they were damaged by the necessity of paying certain carrying costs due to Sapphire's interference with the sale of the Kiawah property. These factual assertions are sufficient to defeat the motion to dismiss. *See Geinosky v. City of Chi.*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012).

Sapphire also contends that the breach of contract claim is moot because, after Judge Chang entered his preliminary injunction and order, the sale of the Kiawah property proceeded and closed. The Court disagrees; again, defendants are seeking relief for breach of contract, contending that they were damaged by having to incur additional carrying costs in order to close the Kiawah sale. The sale of the Kiawah property has not made them whole in this respect. Sapphire's motion to dismiss the breach of contract claim is denied.

## IV. FDCPA AND "DEBT COLLECTOR"

Sapphire claims that Count IV of defendants' counterclaim should be dismissed because the FDCPA applies only to "debt collectors," and Sapphire is not a "debt collector" within the meaning of the FDCPA. The statute defines "debt collector" as "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, "[t]he term does not include **. . .** any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii).

8

Sapphire explains that the Seventh Circuit has held that this exception to the definition of "debt collector" for persons who buy debt not in default applies to a person even if he purchases a debt that is in default according to its original terms, if the debt is current according to a forbearance agreement. *Bailey v. Sec. Nat. Servicing Corp.*, 154 F.3d 384, 387-88 (7th Cir. 1998). In such circumstances, the person purchasing the debt is a creditor, not a debt collector, because and to the extent he contemplates not merely collecting a defaulted debt but an "ongoing relationship" with the debtor. *See Ruth v. Triumph P'ships*, 577 F.3d 790, 797 (7th Cir. 2009).

Defendants have been making and are continuing to make scheduled payments under the Second Forbearance Agreement. Under defendants' own version of the facts, they were not in default of the Second Forbearance Agreement at the time Harris Bank assigned the loan to Sapphire, and Sapphire undertook no collection efforts until after defendants attempted to sell the Kiawah property. Under these facts, Sapphire argues, Sapphire is a creditor, not a debt collector.

However, defendants argue that "as long as the assignee takes the position or otherwise believes that the debt was in default when acquired, the FDCPA applies, even if the assignee's position on default proves to be false." (Opp'n Br. at 10, ECF No. 64.) The Seventh Circuit has instructed that in determining whether, for purposes of the FDCPA, a debt was in default at the time it was sold, courts should "focus[] on the status of the obligation *asserted by the assignee*." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 538-39 (7th Cir. 2003) (emphasis added). Defendants allege that Sapphire purchased the loan and, less than three months later, asserted that the debt was in default. (Countercl. ¶ 27.) According to defendants, the asserted defaults either are completely fabricated or existed at the time of the Second Forbearance Agreement— and, it follows, at the time of the assignment of the loan to Sapphire. Thus, if defendants were in default at all, they were in default at the time of the assignment.

9

As defendants argue, it is a plausible inference, based on the facts alleged in the counterclaim, that Sapphire purchased the loan believing defendants were in default under the Second Forbearance Agreement or intending to assert that they were, regardless of the truth of the matter, and proceed to collect the debt by foreclosing on the collateral. In any case, defendants allege that Sapphire has taken the position that the debt was in default at the time of assignment. Defendants have alleged facts that, if true, would establish that Sapphire is a "debt collector" within the meaning of the FDCPA.

For the first time in its reply brief, Sapphire argues that the defendants' FDCPA claim must be dismissed because the loan was not consumer debt within the meaning of the FDCPA. *See* 15 U.S.C. § 1692(a)(5). Because this issue was raised for the first time in the reply brief, it is waived. *PharMerica Chi., Inc. v. Meisels*, 772 F. Supp. 2d 938, 954 n. 10 (N.D. Ill. 2011).

Sapphire's motion to dismiss is denied as to defendants' FDCPA claim.

## V. RESPA AND TILA—BUSINESS PURPOSE

Sapphire argues that defendants' RESPA and TILA claims must be dismissed because the loan in question was made for a business purpose. RESPA and TILA specifically exempt transactions involving credit "primarily for business, commercial or agricultural purposes." 12 U.S.C. § 2606(a)(1), 15 U.S.C. § 1603(1). Under the relevant regulations of both statutes, the provisions for determining when the exemption applies are identical. *See* 12 U.S.C. § 2606(b); RESPA Manual 4.02[1] n. 1.

Sapphire states that the loan was given to Barkston, a business entity that files a corporate tax return and kept corporate records that were monitored as part of the loan agreement; the Rices were merely guarantors of the loan. Defendants respond that the original purpose of the loan was "to fund significant construction on Mr. and Mrs. Rice's personal residence located at 9110 Barkston Drive in Alpharetta, Georgia," and Barkston did not even exist until the Rices

10

applied to Harris Bank for the loan; Harris Bank required them to form a business entity to serve as the formal recipient of the funds, and the Rices formed Barkston purely for that purpose.

This explanation is surprising. The borrowed sum of $9,400,000 (Countercl. ¶ 16) seems excessive for the stated purpose of "fund[ing] significant construction on Mr. and Mrs. Rice's personal residence" (Opp'n Br. 14), unless "significant" is a bit of an understatement. Further, in the materials they submitted in support of their motion for entry of preliminary injunction before Judge Chang, defendants themselves (through different counsel) frequently referred to the loan as "the Commercial Real Estate Loan." *See* Pls.' Mem. Supp. Mot. Prelim. Inj., *Rice v. LSREF3 Sapphire Trust 2014*, Case No. 14 C 8675, ECF No. 10.

However, on a motion to dismiss, courts assume the truth of the allegations made by the pleading party, as well as any factual statements made in a response brief to the extent that they are consistent with the allegations of the challenged pleading. *See Geinosky*, 675 F.3d at 745 n. 1. The Court must assume at this stage that defendants are correct that the loan was only formally a commercial loan and was in substance a personal, consumer loan.

Under that assumption, defendants' claim survives Sapphire's motion to dismiss. Courts assess whether the business purpose exemption applies based on the substance rather than the form of the transaction, in the totality of the circumstances. *See Friedman v. Maspeth Fed. Loan & Sav. Ass'n*, 30 F. Supp. 3d 183, 192-93 (E.D.N.Y. 2014); *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1002 (N.D. Ill. 2009). Sapphire's motion is accordingly denied as to the RESPA and TILA claims.

## VI.     ICFA—UNFAIRNESS

Defendants claim that Sapphire's "unfair" conduct in this case violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. The Seventh Circuit has explained the ICFA as follows:

> The Illinois Consumer Fraud Act "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960 (Ill. 2002). The Supreme Court of Illinois has held that recovery under the Consumer Fraud Act "may be had for unfair as well as deceptive conduct." *Id.* In interpreting unfair conduct under the Consumer Fraud Act, Illinois courts look to the federal interpretations of unfair conduct under section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45. *Robinson,* 775 N.E.2d at 960; 815 ILCS 505/2. Thus, three considerations guide an Illinois court's determination of whether conduct is unfair under the Consumer Fraud Act: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson,* 75 N.E.2d at 961. A court may find unfairness even if the claim does not satisfy all three criteria. *Id.* For example, a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.*

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (internal parallel citations omitted).

Defendants allege—or it is a fair inference based on their allegations—that Sapphire purchased a secured debt that was in good standing at the time of assignment, its troubled history notwithstanding; asserted that the debt was in default, with no good-faith basis for the assertion; and attempted to foreclose, without any sincere attempt to support or explain its position that the defendants had defaulted. In other words, according to defendants' allegations, Sapphire purchased a loan and then cynically attempted to manipulate the loan documents to acquire the property defendants had pledged as collateral despite defendants' scrupulous adherence to the terms of the Second Forbearance Agreement. This alleged conduct can be characterized as "immoral, unethical, oppressive or unscrupulous." *See Demitro v. General Motors Acceptance Corp.*, 902 N.E.2d 1163, 1169-70 (Ill. App. Ct. 2009); *see also Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 827 (N.D. Ill. 2013) (plaintiffs stated ICFA unfairness claim because defendant unfairly abused its rights as mortgagee in order to hasten foreclosure on plaintiffs' property).

Further, conduct violates the public policy prong of the ICFA's test for unfairness if it "offends public policy as established by statutes, the common law or otherwise, or, in other words, whether it is at least within the penumbra of some established concept of unfairness." *Ekl v. Knecht*, 585 N.E.2d 156, 163 (Ill. App. Ct. 1991); *see Hill*, 946 F. Supp. 2d at 827 (citing cases). As stated above, the conduct Sapphire is alleged to have committed violates the implied covenant of good faith and fair dealing. It is therefore "within the penumbra of [an] established concept of unfairness." Sapphire's motion to dismiss is denied as to defendants' ICFA claim.

## VII. JURY TRIAL

Sapphire argues that defendants' jury demand should be stricken because they waived their right to a jury trial in the loan documents. (*See* Combined Mot. to Dismiss Countercl., Ex. A, Term Loan Agreement, ¶ 10.14; Ex. C, Guaranty Agreement, ¶ 19); *In re Reggie Packing Co., Inc.*, 671 F. Supp. 571, 573 (N.D. Ill. 1987). Defendants make no substantive argument in response, stating only that they seek to preserve the right to a jury trial to the extent that they have it. Defendants' omission of any substantive response supported by citation to authority or record documents operates as a waiver. *See Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012); *Butler v. Ill. Dep't of Transp.*, 533 F. Supp. 2d 821, 826 (N.D. Ill. 2008). The jury demand will be stricken.

## VIII. VIOLATION OF COURT'S SCHEDULING ORDER

Sapphire contends that the claims it moves to dismiss are improper for the additional reason that the Court had previously entered an order barring further amendments to the pleadings. The Court subsequently ordered the parties to file consolidated amended pleadings when this case was consolidated with Case No. 14 CV 8675, but Sapphire argues that this order did not give defendants leave to assert new claims.

13

The Court agrees with defendants that they did not need leave of court to file a counterclaim with their consolidated amended answer. As defendants explain, they had filed a motion to dismiss through prior counsel, which was pending when this Court ordered the two cases consolidated. Rather than re-file the motion to dismiss after the cases were consolidated, defendants opted to file an answer and counterclaim. Defendants did not violate any order concerning amendment of pleadings. The motion to dismiss is denied as to this ground.

## IX. SAPPHIRE LLC'S MOTION TO DISMISS

Sapphire LLC, having been joined as a party during the pendency of Sapphire Trust's motion to dismiss, seeks to dismiss all the claims against it on the same grounds stated in the Trust's motion, in which it joins, as well as the additional ground that it no longer holds the loan. According to Sapphire LLC, it acquired defendants' loan from Harris Bank on June 19, 2014, and it assigned the loan to Sapphire Trust on the same day. The LLC acknowledges defendants' allegations that they received correspondence dated September 3, 2014, that appeared to have been sent by Sapphire LLC (Countercl. ¶¶ 27, 45, ECF No. 44), but it asserts that the reference to the LLC in this correspondence was a mere "scrivener's error." (LLC Mem. Supp. Mot. Dismiss, ECF No. 90, at 4.) Counts I-V should be dismissed, Sapphire LLC argues, because it no longer holds the loan, and these counts do not make any allegations stemming from anything that transpired on June 19, 2014, the only day on which it held the loan.[4]

Defendants respond that they are not required to "take Sapphire LLC at its word that it holds no interest in the Loan Documents, particularly when Sapphire LLC has acted under them" by sending correspondence in its name concerning the loan, long after the alleged re-assignment

---

[4] Perhaps tacitly conceding, as defendants argue, that Counts VI and VII, the RESPA and TILA counts, may state a claim for failing to provide notice of the transfer of the loan regardless of how long the LLC held it, the LLC asserts as to those counts only the same argument that the Trust made, that the claims should be dismissed because those statutes do not apply to commercial loans. However, as explained above, the Court must reject that argument at this early stage of this case because defendants have alleged that the loan was a consumer loan in substance if not form.

14

date.  (Mem. Opp. LLC Mot. Dismiss, ECF No. 96, at 3.)  The Court agrees.  Defendants cannot know "what, if any interest Sapphire LLC" retained at this early stage of the case, while discovery is ongoing.  (*Id.* at 2.)  The LLC may take the position that the correspondence defendants received referred to the LLC only due to a scrivener's error, but it must adduce evidence to that effect, which it may not do at the motion-to-dismiss stage.  The LLC's motion is denied.

## CONCLUSION

For the reasons set forth above, the Court denies Sapphire Trust's motion to dismiss [55] and Sapphire LLC's motion to dismiss [90], except that defendants' jury demand is stricken.

**SO ORDERED.**

                                      **ENTERED: January 25, 2016**

                                      **_____**
                                      **HON. JORGE L. ALONSO**
                                      **United States District Judge**